SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
Eric C. Morris (SBN 243425)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Plaintiffs,
S.M. by and through her guardian
ad litem NICOLE TORRES; and
Z.M., by and through her guardian
ad litem NICOLE TORRES;
and NICOLE TORRES, an individual,

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.M., a minor, by and through her Guardian ad litem, NICOLE TORRES; and Z.M., a minor, by and through her Guardian ad litem, NICOLE TORRES; and NICOLE TORRES, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF RIVERSIDE; SCOTT JOHNSON, an individual; MATTHEW PLEMONS, an individual; MICHAEL LOUISE MARTIN, an individual; DOES 1 through 10, inclusive;<br><br>DEFENDANTS . | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Civil Rights Violation (Special Relationship) (42 U.S.C. § 1983);<br>2. Civil Rights Violation (State Created Danger) (42 U.S.C. § 1983);<br>3. Violation of Federal Adoption Assistance Act and Child Welfare Act;<br>4. Civil Rights Violation (*Monell* Claim) (42 U.S.C. § 1983);<br>5. Direct Negligence;<br>6. Derivative Negligence;  and<br>7. Negligent Concealment<br><br>**JURY TRIAL DEMANDED** |

///

///

Plaintiff S.M., by and through her guardian ad litem NICOLE TORRES, and Plaintiff Z.M., by and through her guardian ad litem NICOLE TORRES, and NICOLE TORRES, (collectively, "Plaintiffs") allege the following upon information and belief based upon personal knowledge:

## INTRODUCTION & NATURE OF THE CASE

1.      Plaintiffs bring this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions and omissions of defendants COUNTY OF RIVERSIDE ("DEFENDANTS" or "COUNTY" or "COR");   SCOTT JOHNSON ("JOHNSON"), MATTHEW PLEMONS ("PLEMONS");    MICHAEL LOUISE MARTIN ("MARTIN" or "FATHER"), and DOES 1 through 10, inclusive (collectively referred to throughout portions of this Complaint as "DEFENDANTS"), in placing S.M. and Z.M., into the home of Father MICHAEL MARTIN, whom DEFENDANTS   previously knew had previously committed physical domestic violence upon S.M. and Z.M., committed rape upon his wife, sexually assaulted other minor sibling children, pulled a knife upon and was shot by police, and despite DEFNDANTS' documented and written notice, whereby MARTIN continued to sexually assault and rape Plaintiffs S.M. and Z.M. in violation of the Plaintiffs' Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution.

2.      DEFENDANTS   are directly liable for Plaintiffs' injuries under federal law pursuant to 42 U.S.C. § 1983.   DEFENDANTS   also proximately caused Plaintiffs' injuries and are liable under state and federal law under the principles set forth in *Monell v. Department of Social Services,* 426 U.S. 658 (1978).   DEFENDANTS  are also directly liable for Negligence for failing to discharge mandatory duties causing Plaintiffs' injuries and derivatively liable for Negligence causing Plaintiffs' injuries.

## JURISDICTION & VENUE

3.      This action is brought under 42 U.S.C. § 1983 and pendent state law claims under the California Tort Claims Act against DEFENDANTS.

4.      California Government Code § 905(m) creates an exception to the California Government Claims Act (Gov't Code § 910 *et seq*.) requirement for claims made pursuant to California Code of Civil Procedure § 340.1 (recovery of damages resulting from childhood sexual abuse).

5.      Subject matter jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (civil rights). Plaintiffs' state law claims for relief are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in the County of Riverside California, which is located in the Central District of California. Plaintiffs and DEFENDANTS   are also, and at all relevant times were, citizens and residents of Riverside County, located in the Central District of California. This Court also has specific personal jurisdiction over all DEFENDANTS  .

## PARTIES

7.       Plaintiff S.M., by and through her guardian ad litem NICOLE TORRES, is, and at all times mentioned was, a minor born in 2013, residing in Riverside County.

8.      Plaintiff Z.M., by and through her guardian ad litem NICOLE TORRES, is, and at all times mentioned was, a minor born in 2013, residing in Riverside County.

9.      Nicole Torres is the Mother of S.M. and Z.M. who is acting as S.M. and Z.M.'s Guardian Ad Litem pursuant to the Petition and Order for Appointment of Guardian ad Litem.

10.      Plaintiff NICOLE TORRES is the Mother of S.M. and Z.M. and at all times mentioned was residing in Riverside County

11.      Defendant COUNTY OF RIVERSIDE is, and at all times mentioned was, a duly organized public entity, form unknown, existing as such under the law of the State of California and responsible for the policies, procedures and practices implemented through its various agencies, agents, departments and employees, and for the injuries occasioned thereby. At all relevant times, Defendant County was the employer of defendants

MATTHEW PLEMONS and SCOTT JOHNSON, who were social workers employed by defendant COUNTY OF RIVERSIDE'S Department of Public Social Services - Childrens Services ("DPSS") and DOES 1 through 5 ("DOE EMPLOYEES"), and DOES 6 through 10 ("DOE SUPERVISORS"), who were managerial, supervising and policymaking employees of defendant COUNTY OF RIVERSIDE's Department of Public Social Services - Childrens Services, are sued in their individual capacity for damages only. Their actions were ratified by defendant COUNTY OF RIVERSIDE.

12.     At all relevant times, defendants PLEMONS and JOHNSON and defendants DOE EMPLOYEES and DOE SUPERVISORS were duly authorized employees and agents of the COUNTY subject to oversight and supervision by defendant COUNTY OF RIVERSIDE's elected and non-elected officials.

13.     Defendant SCOTT JOHNSON is, and at all times mentioned was, a Social Worker employed by defendant COUNTY OF RIVERSIDE's Department of Public Social Services - Childrens Services, and is an adult residing in County of Riverside, California.

14.     Defendant MATTHEW PLEMONS is, and at all times mentioned was, a Social Worker employed by defendant COUNTY OF RIVERSIDE's Department of Public Social Services - Childrens Services, and is an adult residing in County of Riverside, California.

15.     At all relevant times, defendants DOE EMPLOYEES and DOE SUPERVISORS were duly authorized employees and agents of defendant COUNTY OF RIVERSIDE who were acting under color of law within the course and scope of their respective duties as employees of defendant COUNTY OF RIVERSIDE and with the complete authority and ratification of their principal, defendant COUNTY OF RIVERSIDE.

16.     MICHAEL LOUISE MARTIN is the Father of S.M. and Z.M, is  and at all times mentioned was, residing in Riverside County.

17.     The true names and capacities of the DEFENDANTS sued herein as DOES 1 through 10, inclusive, and each of them, are currently unknown to Plaintiffs, who therefore

sue such DEFENDANTS by fictitious names. Each of the DEFENDANTS   designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE DEFENDANTS   when such identities become known.

18.   Plaintiffs are informed and believe and thereon allege that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other DEFENDANTS   and was the owner, agent, servant, joint venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other DEFENDANTS  . Plaintiffs are informed and believe and thereon allege that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other DEFENDANTS .

19.   At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

20.   In doing the acts and failing and omitting to act as hereinafter described, defendants DOE EMPLOYEES and DOE SUPERVISORS were acting on the implied and actual permission and consent of defendant COUNTY OF RIVERSIDE.

21.   All DEFENDANTS  who are natural persons, including DOES 1 through 10, are sued individually and/or in his/her official capacity as officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives for defendant COUNTY OF RIVERSIDE.

22.   DEFENDANTS COUNTY OF RIVERSIDE and PLEMONS and JOHNSON, including DOES 1 through 10, are liable for Plaintiffs' injuries under California law and under the doctrine of respondeat superior. Liability under California law for public entities and public employees is based upon Cal. Gov't Code §§ 815.2 and 820.

23.   All DEFENDANTS are, and at all times material to this Complaint, were acting under color and authority of state law.

24.     California Government Code § 905(m) creates an exception to the California Government Claims Act (Gov't Code § 910 *et seq.*) requirement for claims made pursuant to California Code of Civil Procedure § 340.1 (recovery of damages resulting from childhood sexual abuse).

## FACTUAL ALLEGATIONS

### A.     S.M. AND Z.M. WERE PLACED IN FOSTER CARE

25.     Plaintiffs S.M. and Z.M. are twins and were born in 2013.

26.     On or about March 18, 2020, S.M. and Z.M., DEFENDANTS placed S.M. and Z.M. in foster care due to father MARTIN's unstable mental health, MARTIN's physical domestic violence issues, MARTIN's documented violent criminal history and MARTIN's previous sexual abuse of a child, among other issues.

27.     From March 18, 2020 through present, DEFENDANTS only provided NICOLE TORRES with limited visitation by and between S.M. and Z.M and TORRES. From March 18, 2020 through present, TORRES submitted written requests for increased visitation with S.M. and Z.M. to DEFENDANTS, however, in response to each and every request by TORRES, DEFENDANTS refused the increased visitation request by and between TORRES and  S.M. and Z.M.

### B.     DEFENDANTS  WERE MANDATED TO DOCUMENT AND REPORT CLAIMS OF ABUSE OF PLAINTIFFS S.M AND Z.M. AND PROTECT PLAINTIFFS S.M AND Z.M. FROM CONTINUED TORTURE BY FATHER MARTIN

28.     Defendant COUNTY OF RIVERSIDE has a responsibility to train the caseworkers and social workers who provide foster care services to dependent children including plaintiffs S.M. and Z.M.. These requirements are under both Federal and California law. The systems in place are not just procedural guidelines. They are a scheme that mandates that officials follow specific guidelines and take affirmative actions to ensure the well-being and promote the welfare of children in foster care. The children are entitled to defendant COUNTY OF RIVERSIDE's protection from harm.

29.    Defendant COUNTY OF RIVERSIDE has received millions of dollars in federal funds from the United States Government and from Taxpayer funds to meet the needs of children in its child welfare system and is therefore required to comply with federal mandates, including those set forth in the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997; Titles IV-B and IV-E of the Social Security Act; 42 U.S.C. §§ 622, et seq.; 671, et seq. ("Adoption and Safe Families Act."). This Act also expressly requires that the caseworker provide an updated copy of the child's record (Case Plan) to the provider at the same time the caseworker places the child with that parent or provider. 42 U.S.C. § 675(5)(D).

30.    The State of California has codified the federal mandates and its own obligations under parts of the Cal. Welf. & Inst. Code. Further regulations are spelled out in California's Department of Social Services' Child Welfare Service's Manual of Policies and Procedures (hereinafter "DSS MPP").

31.    Pursuant to Cal. Welf. & Inst. Code § 16000.1(a)(1): The state has a duty to care for and protect the children that the state places into foster care, and as a matter of public policy, the state assumes an obligation of the highest order to ensure the safety of children in foster care. The California legislature, when declaring that the state assumes an obligation of the highest order to ensure the safety of children in foster care, explicitly abrogated the holding of the Court of Appeal in *County of Los Angeles v. Sup. Ct. of Los Angeles: Real Party in Interest Terrell R.,* 102 Cal.App.4th 627 (2002). See Cal. Welf. & Inst. Code § 16000.1(a)(3).

32.    Cal. Welf. & Inst. Code § 16001.9 mandates that all children in foster care, including S.M and Z.M., have the right to live in a safe, healthy and comfortable home and be free from physical and sexual abuse.

33.    The Federal Foster Care and Adoption Assistance Act requires that caseworkers must develop a Case Plan for each foster child that includes the child's health and education records, known medical problems,  prescribed medications and other relevant related information. 42 U.S.C. §§ 671(a)(16), 675(1), 45 C.F.R. § 1356.21(g)(2).

34.    Defendants were required to develop a case plan (as defined by 42 U.S.C. § 675(1)) for each child, including plaintiffs S.M and Z.M. including a case review system (as defined by 42 U.S.C. §§ 675(5) and 675(a), which mandates that the status of each child is reviewed periodically, but not less than once every six months by either a court or by administrative review in order to determine the safety of the child. There are explicitly procedural safeguards. California codified this mandate under Cal. Welf. & Inst. Code § 366.

35.    As a further part of the procedural safeguards for plaintiffs S.M and Z.M., Cal. Welf. & Inst. Code § 16501.1(a)(13) provides that "[a] child shall be given a meaningful opportunity to participate in the development of the case plan." That case plan is to be included in the court report and considered at each hearing.

36.    At all relevant times, DEFENDANTS   were under mandated rules and regulations and statutes requiring that DEFENDANTS document and report claims of sexual and physical abuse against foster children, including S.M. and Z.M and their siblings.   DEFENDANTS   were required to maintain highly detailed case records of plaintiffs S.M and Z.M.  Each Case Plan was mandated to include, at least, the information identified by DSS MPP § 31-075: "[d]ocumentation of any information provided to the placement services provider and/or respite care provider…" These were requirements.

37.    DEFENDANTS' Social Workers have ministerial mandates, they do not have discretion on whether or not to put this information into the Case Plan.

38.    DEFENDANTS  were further mandated to prepare Case Plan documentation for both plaintiffs S.M and Z.M. and their minor siblings, as identified in DSS MPP § 31-206, including: assessments of the child's placement needs and description(s) of the type of home or institution which best meet those needs; the child's health information and known medical problems.

39.    DSS MPP § 31-310 mandated that DEFENDANTS   monitor plaintiffs S.M and Z.M.'s and their minor siblings' physical and emotional condition and provide that information to the court, including the fact that MICHAEL LOUISE MARTIN had raped

and physically assaulted S.M and Z.M. multiple times, MARTIN had previously sexually assaulted their siblings, MARTIN had raped his wife, and MARTIN had pulled a knife upon a police officer who shot him multiple times among other documented abuse by MARTIN upon the minor children, of which DEFENDANTS were notified, as further detailed herein below.

40.    DEFENDANTS   were further required: to monitor the child's physical and emotional condition, and take necessary actions to safeguard the child's growth and development while in placement (DSS MPP § 31-405.22); providing a child's background information, including behavioral history (DSS MPP § 31-405.29).

41.    DEFENDANTS were required to report the physical and sexual abuses committed by MARTIN against plaintiffs S.M and Z.M. under the Child Abuse Prevention and Treatment Act (P.L. 93-247) and California's Child Abuse and Neglect Reporting Act and their progeny to law enforcement. Cal. Pen. Code § 11164, *et seq*. This required that DEFENANTS' social workers such as defendants JOHNSON and PLEMONS, who were deemed "mandated reporter" to report suspected child abuse to entities including their own county welfare department and they must cross-report to law enforcement. Cal. Pen. Code § 11164, et seq.

42.    The DEFENDANTS were required to keep records about any claims or allegations of sexual abuse and physical abuse of foster children such as plaintiffs S.M and Z.M. by MARTIN (as well as prior complaints of abuse about MARTIN) pursuant to the numerous state and federal regulations governing foster care.

43.    None of the actions done by defendants JOHNSON and PLEMONS or DOES provides immunity as they were not done as a function critical to the judicial process itself and were ***not discretionary***. The actions were ministerial and were done with a reckless disregard for the likelihood of causing PLAINTIFFS' harm.

44.    The foster care requirements referenced above mandate an affirmative duty by DEFENDANT to ensure the safety of plaintiffs S.M and Z.M. The requirements include: reporting claims of abuse pursuant to the Child Abuse Prevention and Treatment

Act (P.L. 93-247) and California's Child Abuse and Neglect Reporting Act; documenting those claims in the Case Plan; documenting in the Case Plan sexual abuse; documenting in the Case Plan physical abuse; and that Case Plan come up for periodic review as a "procedural safeguard." These mandates were put in place for the express purpose to provide for the safety of foster children such as plaintiffs S.M and Z.M. and to provide accurate information.

### C.   DEFENDANTS WERE NOTIFIED THAT S.M, Z.M. AND SIBLINGS WERE BEING ASSAULTED IN FATHER MARTIN'S CARE

45.   Despite the foregoing evidence, *supra*, on or about May 2021, DEFENDANTS returned S.M. and Z.M. to their Father Martin, authorizing overnights and unsupervised visits with their father. Pursuant to the DEFENDANTS continued consent, approval and ministerial directive, from May 2021 through October 2021, S.M. and Z.M. remained with Father Martin overnights and unsupervised.

46.   From May 2021 through October 2021 MARTIN sexually and physically assaulted and raped the minor plaintiffs S.M and Z.M., multiple times.

47.   Upon information and belief, S.M and Z.M., and NICOLE TORRES and grandmother Adrianne Roca notified defendants JOHNSON and PLEMONS about such physical and sexual assaults by MARTIN upon S.M. and Z.M. and their siblings as well, all before DEFENDANTS placed S.M. and Z.M. with MARTIN. Despite said documented notifications, and awareness of MARTIN's documented history of physical and sexual assault upon Plaintiffs, DEFENDANTS refused to protect S.M. and Z.M. from MARTIN.

48.   Upon information and belief, Defendants JOHNSON and PLEMONS were told and were aware that MARTIN physically and sexually abused plaintiffs S.M and Z.M. and their minor siblings prior to their placement with MARTIN.

49.   Defendants JOHNSON and PLEMONS told mother NICOLE TORRES and grandmother Adrianne Roca that something would be done about MARTIN, but no action was taken by defendants JOHNSON and PLEMONS or anyone from defendant COUNTY OF RIVERSIDE.

50.     After plaintiffs S.M and Z.M., grandmother Adrianna Roca and Mother Nicole Torres told defendants JOHNSON and PLEMONS about what MARTIN had done to S.M. and Z.M., the plaintiffs and their family's documented pleas for help were ignored by DEFENDANTS.

**D.     DEFENDANTS  FAILED TO DOCUMENT THE PREVIOUS ABUSE THAT S.M AND Z.M. AND SIBLING A.R. WERE ASSAULTED BY MARTIN  AND  DEFENDANTS  MISREPRESENTED  THE CHILDREN'S CONDITIONS IN VIOLATION OF FEDERAL AND STATE LAW**

51.     DEFENDANTS' policies, customs and omissions, including but not limited to, their failure to properly train and supervise caseworkers by encouraging them not to report or respond to sexual abuse of foster children in their foster care system resulting in their routine failure to provide required information about foster children to the court.

52.     Upon information and belief, despite notification, DEFENDANTS failed to document the physical and sexual abuse by MARTIN upon plaintiffs S.M and Z.M. and their minor siblings or report the physical and sexual assaults upon S.M. and Z.M., as required by law and required by ministerial mandates.  S.M. and Z.M. had monthly visits with DEFANDANTS' social workers, including defendants JOHNSON and PLEMONS. From March 2020 through October 2021, JOHNSON and PLEMONS and the COUNTY social workers visited S.M. and Z.M. regularly. During the social workers' visit, the girls would be alone with JOHNSON and/or PLEMONS for approximately 10 minutes. On two occasions, defendants JOHNSON and PLEMONS met with plaintiffs S.M and Z.M. who disclosed to them the abuse by MARTIN. However, DEFENDANTS failed to notify PLAINTIFFS and the court about the exculpatory evidence regarding MARTIN's continued sexual abuse upon S.M. and Z.M.. Upon information and belief, DEFENDANTS threatened S.M. and Z.M. not to further disclose the abuse by MARTIN upon S.M. and Z.M. to the DEFENDANTS or the court or they would have to be removed from their home and go to a different foster care or a group home.

53.     Numerous employees of defendant COUNTY OF RIVERSIDE's Department of Public Social Services - Childrens Services were aware of the abuse suffered by plaintiffs S.M and Z.M. from MARTIN prior to the placement of plaintiffs S.M and Z.M with father MARTIN in May 2021 for overnight and unsupervised visits.  Despite this, DEFENDANTS   failed to protect S.M. and Z.M.

54.     Upon information and belief, plaintiffs S.M and Z.M. were overmedicated with psychotropic drugs to control their ability to tell others of their abuse and to prevent them from asking for help.

55.     Multiple incidents of physical and sexual abuse were reported to defendants JOHNSON and PLEMONS, but defendants JOHNSON and PLEMONS did not want to properly report the incidents to the COUNTY and the court,  and instead wanted to get S.M. and Z.M. into therapy.

56.     Defendants were notified that, on March 31, 2017,  MARTIN prevented NICOLE TORRES and S.M. and Z.M. from leaving the home and threatened NICOLE TORRES and S.M. and Z.M. that he was going to kill NICOLE TORRES. MICHAEL MARTIN then turned to minor sibling A.R. and threatened to 'pop her in the mouth' if she 'ever spoke to him like that again', and then  he finally left the room toward the living room where he kept his large gun safe containing 10 miscellaneous firearms to execute his threat. The police arrived and arrested MARTIN for Criminal Threats.

57.     Defendants were notified that, on April 11, 2017, law enforcement interviewed sibling V.R., who explained how he observed MICHAEL MARTIN physically assault NICOLE TORRES.

58.     Defendants were notified that, on April 23, 2017, Hemet police received a Penal Code 288(a) sexual perversion with Child 14 (sexual battery) mandatory report against MICHAEL MARTIN from Acacia Middle School *counselor Che Scott*. The report stated that A.R. (minor sibling of S.M. and Z.M.),  notified school counselor  Che Scott that MICHAEL MARTIN inappropriately touched her breast and shoulders with his fingers while making "ooo" and "aahh" noises on April 23, 2017. The report also stated that sibling

A.R. reported that MICHAEL MARTIN poked her with his index fingers on her breast area and MARTIN poked A.R. in her midsection, down to her stomach.

59.     Defendants were notified that, on May 2, 2017, MICHAEL MARTIN was charged with Felony Penal Code 422 for Criminal Threats against NICOLE TORRES.

60.     Defendants were notified that, on May 4, 2017, MICHAEL MARTIN was charged with Penal Code § 136.1(c)(1) when he prevented NICOLE TORRES from contacting law enforcement and intimidated a potential witness.  MICHAEL MARTIN demanded NICOLE TORRES recant her previous statements against him at an upcoming May 8, 2017 court appearance so that he could beat his criminal charges "or else" he would physically assault her as he did in the past and on that day. After MARTIN made criminal threats to TORRES, he pushed TORRES against the bed. While restricting TORRES' movement, MICHAEL MARTIN forcefully pulled down her pants, separated her legs, and stuck his fingers into her vagina while she begged him to stop. After MARTIN had finished sexually assaulting NICOLE TORRES in their home, Hemet Police responded to the reported sexual abuse and arrested MICHAEL MARTIN for violating Penal Code  §§ 289(a)(1) and 136.1(a)(2).

61.     Defendants were notified that, on May 8, 2017, the Riverside Superior Court issued a three year criminal protective order to NICOLE TORRES to protect against perpetrator MICHAEL MARTIN.

62.     Defendants were notified that, on May 10, 2017, NICOLE TORRES and her children moved into a domestic violence shelter to escape the MARTIN abuse. Shortly thereafter, Defendants were notified that, MARTIN appeared uninvited at the Domestic Violence Shelter and whereby MARTIN threatened TORRES and S.M. and Z.M. in person, in spite of the active court restraining order.

63.     Defendants were notified that, on June 29, 2017, the District Attorney charged MARTIN with Penal Code 422 Criminal Threats against NICOLE TORRES and charged MARTIN with a felony violation of Penal Code 136.1(c)(1) for preventing NICOLE TORRES from reporting crimes to law enforcement.

64.     Defendants were notified that an August 21, 2017 official report stated that the children cower when they see MARTIN. The report stated that MARTIN left bruises on sibling V.R.'s arm from grabbing them so aggressively. The report stated that MICHAEL MARTIN tossed Z.M. into the air but instead of catching her, he sadistically moved out of the way and let Z.M. fall and caused Z.M. to break her leg. In said report, sibling A.R. testified that MARTIN broke Z.M.'s hand and arm.

65.     Defendants were notified of the following: that on October 28, 2017, MARTIN stalked NICOLE TORRES at her workplace, despite there being a restraining order in place prohibiting him from doing so. MARTIN falsely imprisoned NICOLE TORRES by blocking her movement. Then, MARTIN brandished a knife at TORRES and threatened  to kill himself. Two officers from the Hemet Police Department arrived and ordered MARTIN to drop the knife. MARTIN refused to drop his knife and began charging the police officers with his  knife raised in the air. As a result, the two Hemet police officers opened fire and  struck MARTIN multiple times at close range. MARTIN survived the shooting and sued the police, and received a substantial settlement from the City of Hemet Police Department.  (Hemet Police Report, 17-10516). After the shooting, Hemet Police Officer J. Green interviewed MARTIN'S mother, Laurel Gunn, who stated that MARTIN had a history of mental health issues; Officer Green stated, "Martin went into a field and poured gasoline all over himself, and threatened to light himself on fire… [and also] an incident where Martin beat himself in the head with a hammer...and being admitted into the hospital." (Id.) Officer Green interviewed MARTIN's sister Lauren Falconieri, and stated, "...two weeks prior to the shooting, Martin took a bunch of pills…Falconieri said she asked Martin if he was trying to do suicide by cop and Martin answered yes and said that he just wanted to die.... ...Martin was probably bipolar...  Falconieri told me that after the hammer incident, she remembered Martin hitting his head on walls causing cuts and bruises to his face [he did this] a couple times a year...throwing things, hitting himself throwing himself into walls, and breaking things to the point that he had glass in his hands

and arms...Martin was held on a 5150 hold in the Los Angeles area because of a suicide attempt …" (Id.).

66.     Defendants were notified of the following: Hemet police officers documented MARTIN's excessive criminal history and mental health issues:

"Martin's juvenile history showed that he was arrested for Burglary and Robbery. ...as an adult he was charged with Vehicle Theft, Insufficient funds, and the most current which Martin was on bail for was a Domestic violence (criminal threats) towards Torres....I found that Martin had ten firearms registered to him. ..[27:37-28:8]n twelve calls involving Martin or Torres. The calls began in March of 2017 when Martin was arrested under file number 17-3031 for 422 PC...These calls included a report of a sexual assault which was documented under file number 17-3872, a verbal disturbance where Martin was arrested on file number 17-4252, an additional verbal disturbance with no arrest and mental health and welfare check calls....17-4252 Martin was arrested for 289(a)(1)PC and 136.1(a)(2) with Torres was listed as a victim....17-10335 where Martin was the suspect of a 417(a)(1) in which he used a taser on another subject. ..[Martin was charged] 243(e)(1)PC on 10/16/2017 (file number PE173420106)....." (Id.).

67.     Defendants were notified that, on December 1, 2017 MARTIN was charged for committing violations of Penal Code  245(a)(1) felony Assault upon Hemet Police Officer Wood with a deadly weapon (knife), and MARTIN was charged with violation of Penal Code  § 236 felony false imprisonment upon NICOLE TORRES, and was charged with violating Penal Code  273.6(a) or  violation of protective order stemming from the October 28, 2017 shooting  incident.

68.     Defendants were notified that, on March 13, 2018,  MARTIN was arrested for violating Penal Code § 488 theft.

69.     Defendants were notified that, on June 24, 2018 MARTIN pled ***guilty*** to three criminal charges: (1) Attempted Criminal Threats; (2) Brandishing a deadly weapon at NICOLE TORRES and The Police; and (3) Falsely Imprisoning NICOLE TORRES during the October 28, 2017 incident.

70.     Defendants were notified that, in a July 31, 2018 police report, MARTIN's gun "collection" included a 40 Pistol, unknown Pistol, .45 Pistol, 20G Shotgun, 12G Shotgun, 12G Shotgun, 3006 Rifle, 270 Rifle, .22 Rifle, .22 Rifle, 7.62 Rifle, of which all guns were returned to MARTIN by the police on July 21, 2018.

71.     Defendants were notified that, on December 13, 2018, the State of California, Bureau of Security, suspended MARTIN'S exposed firearm permit due to his extensive criminal history.  On December 13, 2018, the State of California Bureau of Security, Case No 1202018006682, issued a suspension of MARTIN'S firearm permit based upon MARTIN'S criminal convictions for:  (1) July 24, 2018 Penal Code § 422 conviction,  (2) March 13, 2007 Nevada Felony Conspiracy Grand Larceny Conviction, (3) July 25, 2001 Vehicle Code § 10852- tampering with vehicle, and (4) September 23, 2022 Penal Code § 475(a) conviction and Penal Code §§ 475, 476 forgery conviction.

72.     Defendants were notified that, on March 14, 2019 MARTIN engaged in an argument with NICOLE TORRES, and he threw a cell phone at NICOLE TORRES's head. MARTIN was arrested for assault. Thereafter, Defendants were notified that on  March 14, 2019, MARTIN further assaulted Z.M. by repeatedly hitting her with a belt and telling her "I hope you broke your back."   (Riverside Superior Court, Case No. BAF1700449).

73.     Defendants were notified that in a June 24, 2019 report, minor sibling A.R. testified that MARTIN exhibited inappropriate sexual behaviors towards her, such as repeatedly watching her shower naked for about five minutes per occasion.

74.     Defendants were notified that, on August 25, 2019, MARTIN attacked NICOLE TORRES and used both his hands to push her shoulders down until she subsequently fell into a plastic storage bin. When TORRES attempted to call 9-1-1, MARTIN took her phone and threw it against the wall, rendering the phone inoperable.

75.     Defendants were notified that, on September 4, 2019, MICHAEL MARTIN attacked S.M. by squeezing her wrists and then MARTIN threatened S.M. telling her not to "tell anyone" about the quarter size bruises he left her on her wrists or else "she would be taken away."

76.     Defendants were notified that, on September 25, 2019, minor sibling V.R. told DEFENDANTS that MICHAEL MARTIN held a gun to NICOLE TORRES stomach and threatened  to kill her.

77.     Defendants were notified that, on October 9, 2019 a Criminal complaint was filed against MICHAEL MARTIN for committing battery against NICOLE TORRES during the August 25,  2019 incident.

78.     Defendants were notified that, on December 25, 2019, MICHAEL MARTIN hit Z.M.  and sprained Z.M.'s finger. MICHAEL MARTIN threatened and instructed the children to lie to the doctor by telling them Z.M. injured herself while playing.

79.     Defendants were notified that, on December 31, 2019 at 4 a.m. MICHAEL MARTIN banged on NICOLE TORRES window in violation of  a restraining order. MARTIN stood outside of TORRES house in a black hoodie accompanied by several other individuals. NICOLE TORRES called the police and MARTIN left. Approximately four hours later, at 8 a.m., MARTIN broke into TORRES house and screamed at TORRES. MARTIN  pushed minor sibling A.R. The police were called and took a report.

80.     Defendants were notified that, on January 23, 2020, MICHAEL MARTIN admitted: (1) he violated and disregarded the court's visitation orders and restraining orders; (2) he had not completed his court ordered anger management or parenting courses; (3) he refused to participate in his court ordered counseling sessions; and finally (4) MARTIN gloated about using inappropriate physical discipline methods with his children. MARTIN's admissions to DEFENDANTS served as ample notice to the DEFENDANTS that S.M. and Z.M. were not safe in MICHAEL MARTIN's custody.

81.     Defendants were notified that, on March 3, 2020, minor sibling V.R. reported that MICHAEL MARTIN forced V.R. and his minor sister A.R. to repeatedly look at explicit naked pictures of MARTIN and TORRES naked. V.R. stated that MARTIN often slapped him in the face as discipline. V.R. confessed to DEFENDANTS, that V.R. kept a bat by the side of his bed for protection from MARTIN in fear every night of MARTIN'S

arrival. As sibling V.R. shared with DEFENDANTS, he did not feel safe in his own home when MICHAEL MARTIN was present.

82.     Defendants were notified that, on March 13, 2020, MARTIN made threats in front of the entire family to kill NICOLE TORRES and all the children.

83.     Defendants were notified that, on March 18, 2020, MICHAEL MARTIN violated the protective order and appeared at NICOLE TORRES' home.  TORRES and sister Kaley Torres attempted to flee from him, and MARTIN followed them in his vehicle. TORRES called 911, and MARTIN blocked TORRES' vehicle by cutting her off. MARTIN exited his vehicle and approached TORRES' vehicle and yelled.  The police took a report.

84.     Defendants were notified that, on March 18, 2020, MICHAEL MARTIN threatened in writing to kill DCSS Social Worker LaKeya Johnson, if his kids were not returned to him. Social Worker LaKeya Johnson stated, "On March 18, 2020, I called to notice the father; he was very upset and [MARTIN] continued to say 'where are my fucking kids! LaKeya you better give back my fucking kids, I do not understand why you have them, I better get back my fucking kids or some ones life is going to end tonight!'"

85.     The Defendants were notified that, on September 22, 2020, MICHAEL MARTIN was arrested for violating court protective order and falsely imprisoning NICOLE TORRES during the events that transpired on March 18, 2020.

86.     The Defendants were notified that, on November 9, 2020, MICHAEL MARTIN stalked NICOLE TORRES by parking in front of her residence in violation of the restraining order.

87.     The Defendants were notified that, on November 10, 2020, the Court ordered MICHAEL MARTIN to participate in a psychological evaluation.

88.     The Defendants were notified that, on September 17, 2020, Dr. Kenneth Garrett issued a psychological report on MICHAEL MARTIN. MARTIN admitted to the use of inappropriate corporal punishment upon S.M. and Z.M.  Dr. Garrett report identified MARTIN's extensive criminal history, which commenced during his adolescent years

when he was arrested for forgery, auto theft and tampering with a stolen vehicle. Dr. Garret identified MARTIN brandished a knife on the Police. Dr. Garrett expressed concern that MARTIN showed naked pictures he had of him and his wife to his children. Dr. Garrett diagnosed MARTIN with a personality disorder, turbulent type, with his histrionic features, "which tends to be predictive of unstable interpersonal relationships especially members of the opposite sex…" Dr. Garrett further noted MARTIN's tendency to project some of his issues which are his fault on others, and suggests this is  negatively impacting the wellbeing of his children.

89.    Shortly thereafter, the Defendants referred and paid Malcolm Lilienthal to provide therapy to MARTIN. Mr. Lilienthal proclaimed that he was a licensed MFT therapist and was also the elected Mayor of Hemet.  However, later, under oath, Mr. Lilienthal admitted he never had successfully secured an MFT license, rather he had been issued an AMFT license which had been suspended by the State of California four times due to his failing the State ethics exam. Mr. Lilienthal admitted under oath that he had provided Mr. MARTIN over 100 therapy sessions (Defendants paid Lilienthal for therapy) during which time Mr. Lilienthal's AMFT license was suspended.  Moreover, Mr. Lilienthal later testified under oath that pursuant to request, he had provided the Defendants and the Court two official progress reports on MARTIN and testified in court that Mr. MARTIN had completely rehabilitated from all his mental health issues. Lilienthal's therapy, reports and testimony all took place during which time Mr. Lilienthal's AMFT license was suspended.

90.    The Defendants were notified that, on May 28, 2021 MARTIN kicked and threw S.M. and Z.M.'s dog to the ground and forced the dogs to eat their own feces when the dogs accidently defecated.

91.    The Defendants were notified that, on July 11, 2021 MICHAEL MARTIN backhanded S.M. across the face while he was driving because he was upset at S.M. for telling the social worker something he did not want her to report.

92.     The Defendants were notified that, on July 27, 2021, minor Z.M. acted out in person during DEFENDANTS' WRAP Team meeting by pulling out a pocketknife and saying she wanted to commit suicide.

93.     On July 28, 2021, Defendants removed S.M. and Z.M., without a proper Removal Warrant.

94.     On August 4, 2021, the Defendants placed S.M. and Z.M. with MICHAEL MARTIN's custody with unsupervised and overnights. On August 5, 2021, Defendants authorized S.M. and Z.M. to remain in MICHAEL MARTIN's care unsupervised and overnight.

95.     The Defendants were notified that, on August 17, 2021, MICHAEL MARTIN became enraged with S.M. and Z.M. for playing, rather than cleaning their room, and as a response, MARTIN kicked a Little Tykes kitchen set into his daughter's leg, injuring her.

96.     The Defendants were notified that, on September 23, 2021, NICOLE TORRES disclosed that MICHAEL MARTIN's, chased TORRES with a baseball bat, and dented her car by hitting it with the bat.

97.     The Defendants were notified that, on September 26, 2021 MARTIN pushed NICOLE TORRES to the bed, sat on her chest, and while using his right hand and all his weight to push NICOLE TORRES down he used his left hand to strangle her neck preventing her airflow for approximately one minute.  The police took a report.

98.     Defendants were notified that, on September 29, 2021, while S.M. and Z.M. were in MICHAEL MARTIN's custody, DEFENDANTS received an immediate response referral notifying them of the September 26, 2021 MICHAEL MARTIN domestic violence and physical abuse upon NICOLE TORRES.    MICHAEL MARTIN communicated to a DPSS-CSD a Social Worker by threatening "if [his] children are taken 'someone will end up in the grave.'"

99.     In October 2021, Defendants final finally removed S.M. and Z.M. from MARTIN.

100.   On November 16, 2021 S.M. and Z.M further notified the Defendants of details of MARTIN's previous sexual assault.  Moreover, on November 16, 2021, S.M. and Z.M. notified the Defendants that MICHAEL MARTIN continued to freely roam the streets  and MARTIN continued to stalk S.M. and Z.M. at the gate of their school or their grandmother's home. S.M. and Z.M. notified the DEFENDANTS  that MARTIN was constantly stalking and accosting S.M. and Z.M.,  and on several occasions, MARTIN bribed S.M. and Z.M. with money. Despite this alarming disclosure, the Defendants failed to take appropriate actions to protect S.M. and Z.M.

101.   On March 16, 2022, S.M. and Z.M. provided more detailed information to Defendants regarding MARTIN's rape of S.M. and Z.M...

**E.   DEFENDANTS' FAILURE TO COMPLY WITH THEIR OBLIGATIONS TO DOCUMENT AND REPORT MARTIN'S ABUSE UPON S.M. AND Z.M. AND THEIR SIBLINGS, WHICH WAS THE PROXIMATE CAUSE OF ABUSE TO PLAINTIFFS S.M AND Z.M.**

102.   DEFENDANTS   were required to document and report the physical and sexual abuse by Father MARTIN upon plaintiffs S.M and Z.M and their siblings. They were required to provide plaintiffs S.M and Z.M. an opportunity to be heard through the Case Plan. The information was mandated to be in the Case Plan, which must be reviewed at least every six months. Had the information been included, the abuse of plaintiffs S.M and Z.M. by FATHER MARTIN would have ceased and the damage mitigated.

<u>**FIRST CAUSE OF ACTION**</u>

**(VIOLATION OF SUBSTANTIVE DUE PROCESS, FOURTEENTH AMENDMENT– SPECIAL RELATIONSHIP, 42 U.S.C. § 1983.)**

**(By All Plaintiffs Against Defendants SCOTT JOHNSON, MATTHEW PLEMONS and DOE EMPLOYEES)**

103.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

104.   The Federal Civil Rights Act provides a civil remedy against a person, who under color of state law, deprives another of federal rights cognizable under 42 U.S.C. § 1983.

105.   There was a "special relationship," a custodial relationship, between plaintiffs S.M and Z.M. and DEFENDANTS that required defendant DEFENDANTS to assume certain responsibilities for plaintiffs S.M and Z.M.'s safety and well-being.

106.   Plaintiff S.M and Z.M. had a right to be free from harm while involuntarily in government custody and the right not just to medical care, treatment and services, but to not be violently assaulted, raped and sexually abused multiple times.

107.   At all times referred to in this Complaint, Defendants JOHNSON and PLEMONS and all those acting either in concert or in conjunction with them, or those acting independently, were acting under color of state law, and in their individual and/or official capacities as officials, agents and employees of defendant COUNTY OF RIVERSIDE.

108.   Defendants JOHNSON and PLEMONS, and all those acting either in concert or in conjunction with them, or those acting independently, while in their individual and official capacities and acting under color of state law, and while Plaintiffs S.M. and Z.M. were under the care and custody of defendant COUNTY OF RIVERSIDE, they deprived Plaintiffs S.M. and Z.M. of certain rights, privileges, and/or immunities which were secured by the United States Constitution and other laws, including a denial of substantive due process under the Fourteenth Amendment to the United States Constitution. This deprivation of rights, privileges, and/or immunities has caused Plaintiffs to suffer damages in amounts to be determined at trial.

109.   Specifically, Defendants JOHNSON and PLEMONS engaged in affirmative conduct in knowingly, intentionally and with deliberate indifference, ignoring, suppressing and destroying evidence of the physical and sexual abuse suffered by Plaintiffs S.M. and Z.M. and their siblings, violated state and federal law regarding the reporting and prevention of sexual and physical abuse, failed to protect Plaintiffs S.M. and Z.M. from

such abuse, and allowed S.M. and Z.M. to be present, largely unsupervised, and overnights, in close proximity to their abuser, MARTIN.

110.   The Fourteenth Amendment substantive due process clause protects a foster child's liberty interest in social worker supervision and protection from harm continuing while the child is placed in foster care. Once the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care. Plaintiffs S.M. and Z.M. enjoyed a special relationship with the Defendants and the Defendants owed them a duty to protect.

111.   At all times referred to in this Complaint, defendants JOHNSON and PLEMONS and all those acting either in concert or in conjunction with them, or those acting independently, were acting under color of state law, and in their individual and/or official capacities as officials, agents and employees of defendant COUNTY OF RIVERSIDE.

112.   Defendants JOHNSON and PLEMONS, and all those acting either in concert or in conjunction with them, or those acting independently, while in their individual and official capacities and acting under color of state law, and while Plaintiffs S.M. and Z.M. was under the care and custody of defendant COUNTY OF RIVERSIDE, deprived Plaintiffs S.M. and Z.M. of certain rights, privileges, and/or immunities which were secured by the United States Constitution and other laws, including a denial of substantive due process under the Fourteenth Amendment to the United States Constitution. This deprivation of rights, privileges, and/or immunities has caused Plaintiffs to suffer damages in amounts to be determined at trial.

113.   Specifically, Defendants JOHNSON and PLEMONS engaged in affirmative conduct in knowingly, intentionally and with deliberate indifference, ignoring, suppressing and destroying evidence of the physical and sexual abuse suffered by Plaintiffs S.M. and Z.M., violated state and federal law regarding the reporting and prevention of sexual and physical abuse, failed to protect Plaintiffs S.M. and Z.M. from such abuse, and allowed

him to be present, largely unsupervised, in close proximity to their abuser, MICHAEL MARTIN

114.   The Fourteenth Amendment substantive due process clause protects a foster child's liberty interest in social worker supervision and protection from harm continuing while the child is placed in foster care. Once the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care. Plaintiffs S.M. and Z.M. enjoyed a special relationship with the Defendants and the Defendants owed

115.   Plaintiffs S.M. and Z.M. a duty that is the quintessential responsibility of those assigned the responsibility to safeguard the well-being of this helpless and vulnerable child.

116.   Defendants had an obligation to provide adequate medical care, protection and supervision to children removed from their parents and placed in foster care.

117.   The rights alleged herein were clearly established at the time they were violated.

118.   Defendants' conduct alleged hereinabove was performed with deliberate indifference to the liberty and substantive due process interests of Plaintiffs S.M. and Z.M. Defendants were objectively and subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, the Defendants actually drew such an inference and any reasonable official would have been compelled to draw such inference under the circumstances of this case. In fact, Defendants actually knew of the prior acts of MICHAEL MARTIN to Plaintiffs S.M. and Z.M. (as well as MICHAEL MARTIN's acts to others) prior to placing them in the same foster home with MARTIN, unsupervised and overnights.

119.   As a direct and proximate result of Defendants' deprivation of the rights, privileges,  Plaintiffs S.M. and Z.M. has suffered severe physical and psychological injury and other damages, which have been caused by Defendants.

120.   As a result of Defendants' conduct, Plaintiffs S.M. and Z.M., requests an award of reasonable attorneys' fees and Plaintiffs' costs on their behalf expended as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988.

121.   Defendants' conduct as alleged herein, involved reckless or callous indifference to the federally protected rights of the Plaintiffs S.M. and Z.M. and Plaintiffs S.M. and Z.M., is therefore entitled to an award of punitive damages against the Defendants.

**SECOND CAUSE OF ACTION**

**(VIOLATION OF SUBSTANTIVE DUE PROCESS,**

**FOURTEENTH AMENDMENT**

**STATE CREATED DANGER, 42 U.S.C. § 1983.)**

**(By All Plaintiffs Against Defendants SCOTT JOHNSON and MATTHEW**

**PLEMONS and Doe Employees)**

122.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

123.   The Federal Civil Rights Act provides a civil remedy against a person, who under color of state law, deprives another of federal rights cognizable under 42 U.S.C. § 1983.

124.   At all times referred to in this complaint,     and all those acting either in concert or in conjunction with them, or those acting independently, were acting under color of state law, and in their individual and/or official capacities as officials, agents and employees of defendant COUNTY OF RIVERSIDE.

125.   Defendants JOHNSON and PLEMONS, and all those acting either in concert or in conjunction with them, or those acting independently, while in their individual and official capacities and acting under color of state law, while and continuing after, Plaintiffs S.M. and Z.M. was under the care and custody of defendant COUNTY OF RIVERSIDE, deprived Plaintiffs of certain rights, privileges, and/or immunities which were secured by

the United States Constitution and other laws, including a denial of substantive due process under the Fourteenth Amendment to the United States Constitution. This deprivation of rights, privileges, and/or immunities has caused Plaintiffs to suffer damages in amounts to be determined at trial.

126.   Specifically, defendants JOHNSON and PLEMONS engaged in affirmative conduct in knowingly, intentionally and with deliberate indifference, ignoring, suppressing and destroying evidence of the physical and sexual abuse suffered by Plaintiffs S.M. and Z.M., violated state and federal law regarding the reporting and prevention of sexual and physical abuse, failed to protect Plaintiffs S.M. and Z.M. from such abuse, and allowed them  to be present, largely unsupervised, in close proximity to their abuser, MICHAEL MARTIN.

127.   Defendants JOHNSON and PLEMONS and those acting in concert with and/or other employees of defendant COUNTY OF RIVERSIDE, affirmatively created a dangerous situation that Plaintiffs S.M. and Z.M. and the Plaintiffs, would not have otherwise faced.

128.   The Fourteenth Amendment substantive due process clause protects a foster child's liberty interest in social worker supervision and protection from harm continuing while the child is placed in foster care. Once the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care. Plaintiffs S.M. and Z.M. enjoyed a special relationship with the Defendants and the Defendants owed Plaintiffs S.M. and Z.M. a duty that is the quintessential responsibility of those assigned the responsibility to safeguard the well-being of this helpless and vulnerable child.

129.   Defendants had an obligation to provide adequate medical care, protection and supervision to children removed from their parents and placed in foster care.

130.   The Plaintiffs had a substantive due process right to receive communication, including written reports, regarding the dangerous nature of MICHAEL MARTIN, Defendants were aware of dangerous nature of MICHAEL MARTIN and by doing nothing

and failing to comply with their obligations to report the physical and sexual abuse of MICHAEL MARTIN, while aware of the dangerous situation created by Defendants' failures to follow mandated regulations, policies and directives as alleged herein, placed Plaintiffs S.M. and Z.M. in danger of a known and obvious threat.

131.   Defendants JOHNSON and PLEMONS and Defendants further acted with deliberate  indifference to the Plaintiffs' constitutional liberty interest in the creation of their family through the adoption process by deliberately concealing material information regarding the sexual and physical abuse perpetrated by MICHAEL MARTIN on Plaintiffs S.M. and Z.M..

132.   The rights alleged herein were clearly established at the time they were violated.

133.   Defendants' conduct alleged hereinabove was performed with deliberate indifference to the liberty and substantive due process interests of Plaintiffs. Defendants were objectively and subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, the Defendants actually drew such an inference and any reasonable official would have been compelled to draw such inference under the circumstances of this case.

134.   As a direct and proximate result of Defendants' deprivation of the rights, privileges, and/or immunities due to Plaintiffs, Plaintiffs have suffered severe physical and psychological injury and other damages, which have been caused by Defendants.

135.   As a result of Defendants' conduct, Plaintiffs request an award of reasonable attorneys' fees and Plaintiffs' costs on their behalf expended as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988.

136.   Defendants conduct as alleged herein involved reckless or callous indifference to the federally protected rights of the Plaintiffs S.M. and Z.M. and Plaintiffs are therefore entitled to an award of punitive damages against the Defendants.

///

**THIRD CAUSE OF ACTION**

**(VIOLATION OF FEDERAL ADOPTION ASSISTANCE ACT &**

**CHILD WELFARE ACT, 42 U.S.C. § 1983.)**

**(By All Plaintiffs Against Defendants SCOTT JOHNSON**

**and MATTHEW PLEMONS and Doe Employees)**

137.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

138.   Defendants' conduct as alleged herein violated Plaintiffs' statutory rights under the federal Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, 42 U.S.C. § 671 et seq., and the regulations promulgated under the Act, 45 C.F.R. Parts 1355-1357, including but not limited to: the right of each child placed in foster care to have his or her health and educational records reviewed, updated, and supplied to foster care providers with whom the child is placed before or at the time of placement, pursuant to 42 U.S.C. §§ 671(a)(16), 675(1), and 675(5)(D).

139.   Each Defendant acted under color of state law as to the matters set forth herein.

140.   Defendants' acts and omissions complained of herein constitute a policy, pattern, practice, custom, final policy making act, and/or ratification of a subordinate's actions that deprived Plaintiffs of particular statutory rights.

141.   Further, Defendants have failed in their duties to properly hire, train, instruct, monitor, supervise, evaluate and investigate Defendants' caseworkers and supervisors. Defendants were deliberately indifferent to the obvious consequences of these failures, and these failures directly resulted in the deprivation of Plaintiffs' statutory rights.

142.   Defendants' acts and omissions complained of herein have caused, including significant physical and emotional harm, in an amount to be determined at trial. These damages are compensable pursuant to 42 U.S.C. § 1983.

143.   As described herein, Defendants' acts or omissions were in willful, malicious, wanton, reckless or callous disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive and exemplary damages.

**FOURTH CAUSE OF ACTION**

**(VIOLATION OF SUBSTANTIVE DUE PROCESS,**

**FOURTEENTH AMENDENT – *Monell* Claim, 42 U.S.C. § 1983.)**

**(By All Plaintiffs Against Defendants**

**County of RIVERSIDE and Doe Supervisors)**

144.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

145.   The Federal Civil Rights Act provides a civil remedy against a person, who under color of state law, deprives another of federal rights cognizable under 42 U.S.C. § 1983.

146.   Defendant COUNTY OF RIVERSIDE acted with deliberate indifference and in accordance with a policy, practice or custom in defendant COUNTY OF RIVERSIDE of failing to document, report and prevent physical and sexual abuse, in failing to supervise defendants JOHNSON and PLEMONS and any other employees involved in the acts described herein, and in its duty to protect Plaintiffs S.M. and Z.M. and the Plaintiffs from a substantial risk of harm in violation of their rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This was a continued practice of defendant COUNTY OF RIVERSIDE.

147.   As a direct and proximate result of Defendants' deprivation of the rights, privileges, and/or immunities due to Plaintiffs, Plaintiffs have suffered severe physical and psychological injury and other damages, which have been caused by Defendants.

148.   As a result of Defendants' conduct, Plaintiffs request an award of reasonable attorneys' fees and Plaintiffs' costs on their behalf expended as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988.

149.   Defendants' conduct as alleged herein involved reckless or callous indifference to the federally protected rights of the Plaintiffs are therefore entitled to an award of punitive damages against the Defendants.

## FIFTH CAUSE OF ACTION
### (DIRECT NEGLIGENCE PURSUANT TO
### CAL. GOV'T CODE §§ 815.6, ET SEQ.)
### (By All Plaintiffs Against All Defendants)

150.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

151.   Defendants were obligated by constitutional provisions, statutes, and/or regulations, as stated above, to document, report and subsequently inform others, including plaintiffs, about the physical and sexual abuse suffered by Plaintiffs S.M. and Z.M. and perpetrated by MICHAEL MARTIN (who DEFENDANTS knew was a clear and present danger to Plaintiffs S.M. and Z.M.). Defendants did not document the information. DEFENDANTS did not report the information and they did not inform others about the known dangers MICHAEL MARTIN presented to Plaintiffs S.M. and Z.M.

152.   The constitutional provisions, statutes, and/or regulations were designed to protect children such as Plaintiffs S.M. and Z.M.

153.   Cal. Welf. & Inst. Code § 16001.9 mandates that all children in foster care, including Plaintiffs S.M. and Z.M., shall have the right to live in a safe, healthy and comfortable home and be free from physical and sexual abuse.

154.   Cal. Welf. & Inst. Code § 16002(b) mandates that caseworkers such as defendants JOHNSON and PLEMONS, to explain how MARTIN's physical and sexual abuse of S.M. and Z.M. is contrary to the safety or well-being of S.M. and Z.M. This must be placed in the Case Plan.

155.   Cal. Welf & Inst. Code § 16501.1 sets forth the specific requirements for the Case Plan which includes the mandatory development of a case plan for each foster child,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the factors upon which the case plan must be developed, the requirement that the child be given a meaningful opportunity to participate in the development of the case plan, and the requirement that the case plan be reviewed as each review hearing for the child.

156.   The foster care requirements referenced above mandate an affirmative duty by Defendants to ensure the safety of Plaintiffs S.M. and Z.M. The requirements also include: reporting claims of sexual abuse pursuant to the Child Abuse Prevention and Treatment Act (P.L. 93-247) and California's Child Abuse and Neglect Reporting Act. Penal Code Sections 11164-11174.3 is the codification of the California Child Abuse and Neglect Reporting Law. Penal Code Section 11165.7 defines mandated reporters and specifically includes social workers, employees of child care institutions, and any licensed clinical social worker, or child counselor, who are also  mandated to cross-report to law enforcement.

157.   These mandates were put in place for the express purpose to provide for the safety of foster children such as Plaintiffs S.M. and Z.M. and to provide parents like the Plaintiffs with accurate information.

158.   Defendants did not comply with these duties. They failed to document the physical and sexual abuse and failed to protect the safety of S.M. and Z.M., who they knew or should have known were being physically and sexually assaulted by MARTIN. They had an obligation to protection Plaintiffs S.M. and Z.M., including making sure the information was available is their Case Plan.

159.   Defendants failed to diligently discharge those obligations, and that failure was the direct proximate cause of severe injuries caused to Plaintiffs S.M. and Z.M. Had Defendants complied with their mandatory obligation to report that MICHAEL MARTIN was assaulting Plaintiffs S.M. and Z.M., the physical and sexual abuse would have ended earlier. The case reviews were a safeguard meant to protect against the exact type of harm Plaintiffs S.M. and Z.M. suffered.

160.   The negligence of Defendants, and each of them, was the proximate, legal causes of the damages sustained by Plaintiffs S.M. and Z.M. Plaintiffs S.M. and Z.M. has incurred damages to be shown by proof at trial.

**SIXTH CAUSE OF ACTION**

**(DERIVATIVE NEGLIGENCE PURSUANT TO**

**CAL. GOV'T CODE §§ 815.2, ET SEQ.)**

**(By All Plaintiffs Against County of RIVERSIDE)**

161.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

162.   Defendants JOHNSON and PLEMONS and DOE EMPLOYEES were obligated by constitutional provisions, statutes, and/or regulations, as stated above, to document, report and subsequently inform others, including plaintiffs, about the physical and sexual abuse suffered by Plaintiffs S.M. and Z.M. and perpetrated by MICHAEL MARTIN (who they knew was a clear and present danger to Plaintiffs S.M. and Z.M.). Defendants JOHNSON and PLEMONS and DOE EMPLOYEES did not document the information. Defendants JOHNSON and PLEMONS and DOE EMPLOYEES did not report the information and they did not inform others about the known dangers MICHAEL MARTIN presented to Plaintiffs S.M. and Z.M.

163.   California public entities, including local governments, are derivatively liable for the negligent acts or omissions of public employees within the scope of their employment. In the instant matter, defendants COUNTY OF RIVERSIDE is liable for Plaintiffs S.M. and Z.M.'s injuries under California law and under the doctrine of respondeat superior for the acts and omissions of defendants JOHNSON and PLEMONS and DOE EMPLOYEES. Liability under California law for public entities and public employees is based upon Cal. Gov't Code §§ 815.2 and 820. The acts and omissions by defendants JOHNSON and PLEMONS and DOE EMPLOYEES were not discretionary functions and were not policy making decisions.

164.   The COUNTY OF RIVERSIDE, by and through Defendants JOHNSON and PLEMONS and DOE EMPLOYEES decision to not report that MICHAEL MARTIN was causing Plaintiffs S.M. and Z.M. to be physically and sexually abused and to continue to place MICHAEL MARTIN near Plaintiffs S.M. and Z.M., continued to place Plaintiffs S.M. and Z.M. in danger. These requirements were placed to protect individuals like Plaintiffs S.M. and Z.M.

165.   The COUNTY OF RIVERSIDE, by and through Defendants JOHNSON and PLEMONS and DOE EMPLOYEES' failure to diligently discharge the mandatory obligations set forth previously, was the direct proximate cause of severe injuries to Plaintiffs S.M. and Z.M.

166.   The negligence of the COUNTY OF RIVERSIDE, by and through the negligence of defendants JOHNSON and PLEMONS and DOE EMPLOYEES, was the proximate, legal causes of the damages sustained by Plaintiffs S.M. and Z.M. Plaintiffs have incurred damages to be shown by proof at trial.

## SEVENTH CAUSE OF ACTION

### (NEGLIGENCE, CAL. GOV'T CODE §§ 815.2, 815.6, ET SEQ.)

### (By All Plaintiffs Against All Defendants)

167.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

168.   Defendants were obligated, as set forth herein, to ensure the safety of S.M. and Z.M. and ensure their freedom from physical and sexual abuse by reporting claims of abuse, documenting such claims in the Case Plan, and removing them from being housed with MICHAEL MARTIN, while documenting the reasons for that removal in the Case Plan.

169.   Defendants were further obligated by the Department of Social Services, Child Welfare Regulations, to provide full and accurate information to the Plaintiffs upon placing S.M. and Z.M.

170.   The regulations require that the social workers, in this case Defendants JOHNSON and PLEMONS, to provide the providers information regarding any known or suspected dangerous behaviors of the child being placed.

171.   The regulations require that the social workers provide background information on the child, including the child's educational, medical, placement, family, and behavioral backgrounds.

172.   These mandates were put in place for the express purpose of providing for the safety of foster children and to provide full and accurate information.

173.   Defendants failed to comply with these duties by failing to document, and in fact concealing documentation of, the physical and sexual abuse of S.M. and Z.M. by MICHAEL MARTIN, by improperly placing and failing to remove S.M. and Z.M. from the home with MICHAEL MARTIN and to document why such removal was necessary for the safety and well-being of S.M. and Z.M.

174.   By failing to document these incidents, Defendants committed negligent and/or intentional misrepresentation and fraudulent nondisclosure of material facts to the Plaintiffs.

175.   This negligent and/or intentional misrepresentation and fraudulent nondisclosure caused the Plaintiffs damages.

176.   Defendants' negligent and/or intentional misrepresentation or fraudulent concealment regarding the health and well-being of Plaintiffs S.M. and Z.M. was the direct proximate cause of severe injuries to plaintiffs. Plaintiffs have incurred damages to be shown by proof at trial.

## **PRAYER FOR RELIEF**

Wherefore, PLAINTIFFS pray for judgment against DEFENDANTS  as follows:

1.    For general damages, the exact amount of which will be proven at trial;

2.    For special damages for medical and related expenses according to proof;

3.    For punitive damages against the individual defendants;

4.  For statutory damages as permitted by law;

5.  For reasonable attorneys' fees;

6.  For interest;

7.  For costs of suit incurred herein;

8.  For such other and further relief as the Court deems just and proper.

Respectfully Submitted,

SKAPIK LAW GROUP

Dated: October 6, 2023                    By:

/s/ Eric C. Morris
Eric C. Morris
Mark J. Skapik
Geralyn L. Skapik
Blair J. Berkley
Matthew T. Falkenstein
Attorneys for Plaintiffs,
NICOLE TORRES and
S.M. and Z.M., by and through her Guardian
ad litem NICOLE TORRES

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a jury trial.


SKAPIK LAW GROUP

Dated: October 6, 2023            By:

/s/ Eric C. Morris
Eric C. Morris
Mark J. Skapik
Geralyn L. Skapik
Blair J. Berkley
Matthew T. Falkenstein
Attorneys for Plaintiffs,
NICOLE TORRES and
S.M. and Z.M., by and through her Guardian
ad litem NICOLE TORRES

COMPLAINT